# UNITED STATES DISTRICT COURT
for the
District of Montana

FILED

DEC 20 2024

Clerk, U.S. Courts
District of Montana
Missoula Division

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Blue Motorola XT2215-1 MC3C8 Cell Phone with assigned call number (406) 361-9998.

Case No. MJ-24-81-M-KLD

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, for description of the item to be searched, which is incorporated herein by reference.

located in the _____ District of _____ Montana _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B for a list of items to be searched for and seized, which is incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Conspiracy to Distribute Controlled Substances |
| 21 USC 841(a)(1) | Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:
The accompanying affidavit is incorporated as if fully restated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Monte Shaide, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Dec 20, 2024

*Judge's signature*

City and state: Missoula, Montana

Kathleen L. DeSoto
*Printed name and title*

FILED

DEC 20 2024

Clerk, U.S. Courts
District of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

IN THE MATTER OF
THE SEARCH OF:

Blue Motorola XT2215-1 MC3C8
Cell Phone with assigned call number
(406) 361-9998

MJ 24- 89 -M-KLD

**AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT**

I, Monte Shaide, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and am currently assigned to the Missoula Resident Agency in Missoula, Montana. I have been employed as an SA for over 27 years, and in this time, I have had extensive training and experience in conducting violent-crime related investigations, including criminal enterprise investigations. For over nine years, I served on the Pierce County Violent Crime Task Force in Tacoma, Washington, and the Puget Sound Task Force in Seattle, Washington. For over 12 years, I was a member of the FBI Montana Regional Violent Crime Task Force (MRVCTF), which specializes in targeting habitual violent offenders, dismantling violent criminal enterprises, and tracking fugitives. From 2019-2020, I served as a Supervisory Special Agent for the National Tactical Training Unit in Quantico,

1

Virginia, providing national-level program management of the FBI's Field Special Weapons and Tactics (SWAT) program and SWAT sub-programs. Management included certification of SWAT Agents and core skills, specialized training of the SWAT teams, and planning, assistance, and oversight during multiple-office SWAT deployments involving high-risk warrant service, tactical surveillance interdiction, and hostage rescue. In September of 2020, I returned to the Missoula Resident Agency to resume my duties as an SA assigned to the MRVCTF.

2. I am assigned to the case summarized in this affidavit, and the information contained in this affidavit is based on my own observation, training, and experience, and, where noted, information provided to me by other law enforcement officers. I have not included all the facts known to me, but rather only those facts necessary to establish probable cause.

3. This affidavit is in support of a search warrant application for the cell phone of Katrina Everhart relating to Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances and Possession with Intent to Distribute Controlled Substances.

## PROPERTY TO BE SEARCHED

4. This affidavit is made in support of an application for a search warrant to search the following electronic media:

Blue Motorola XT2215-1 MC3C8 Cell Phone with assigned call number (406) 361-9998.

## PROBABLE CAUSE

5.     In February of 2021, the FBI MRVCTF opened a case on David Slattery based on multiple sources who provided information that Slattery was involved in the distribution of methamphetamine and trafficking firearms. Slattery was a registered violent offender who was on parole with the Montana Department of Corrections. Slattery also claims affiliation as a Peckerwood prison gang member, a violent white supremist gang, and has an extensive criminal history. Therefore, Slattery became a top target for the MRVCTF in the Missoula area. Six different cooperating sources, who are deemed reliable, provided information regarding Slattery's distribution network in 2021, and have observed him in possession of multiple firearms. In addition, Slattery, who is from California, would travel to California to obtain large quantities of methamphetamine from his source of supply according to cooperating sources. Slattery would then return to Missoula to distribute the methamphetamine.

6.     An FBI NCIC report revealed that David Slattery has a lengthy criminal history to include 13 felony convictions for various offenses to include Burglary, Possess/Manufacture Dangerous Weapon, Carrying Concealed Dagger, Possession of a Controlled Substance, Possession of Controlled Substance in Prison, Manufacture of a Controlled Substance, Criminal Possession of Dangerous

Drugs with Intent to Distribute, Bail Jumping, and numerous Parole Violations dating back to 1996.

7. In late 2021, Slattery moved to Butte, Montana, and was subsequently arrested on a parole violation. In 2022, Slattery's parole was revoked, and he was sentenced to the Montana State Prison. Due to Slattery's incarceration and no actionable intelligence, I closed our case on Slattery.

8. On May 13, 2024, Slattery discharged his supervision from the Montana State Prison and was released from custody. On July 10, 2024, a Confidential Source (CS1), whose identity is known to law enforcement but wishes to remain anonymous for their own personal safety, stated Slattery contacted CS1 at a residence in Missoula and stated, "I am out (referring to prison) and open for business." Slattery further stated he had been released from prison and was not on probation or parole. Slattery had moved back to Missoula and was staying with Katrina Everhart. Slattery stated he would be back to distributing methamphetamine and fentanyl and would be in touch with CS1. After receiving the above information, I reopened our investigation into Slattery.

9. I determined that Slattery was residing with and in a relationship with Katrina L. Everhart. Everhart resides at 19435 Clarkson Drive, Trailer 36, in Clinton, Montana. I am very familiar with Everhart as I arrested her in 2016 for Conspiracy to Distribute Methamphetamine. Everhart was subsequently sentenced

to five years Federal prison as she pled guilty in United States District Court in Missoula for her involvement in trafficking methamphetamine.

10.     On July 23, 2024, MRVCTF units and I conducted physical surveillance on Everhart and Slattery.  Everhart and Slattery arrived together at the Montana Department of Licensing in Missoula.  Everhart was driving her registered vehicle, a 2017 maroon Nissan Maxima bearing Montana license plate "DOINIT."  Slattery was identified as the passenger.  After confirming Slattery and Everhart were together, the surveillance was terminated as both Everhart and Slattery were conducting counter-surveillance.

11.     On October 11, 2024, a Confidential Source (CS2), whose identity is known to law enforcement but wishes to remain anonymous for their own personal safety, contacted me regarding an individual named "Dave" who was a Peckerwood prison gang member from Southern California.  CS2 stated Dave was selling ounces of methamphetamine out of room 215 at the Broadway Inn Hotel in Missoula.  CS2 stated Dave was in possession of at least five pounds of methamphetamine in a backpack inside his room.  CS2 was provided the name of David Slattery and a photo of Slattery.  CS2 positively identified the person CS2 knew as Dave as David Slattery.

12.     On October 14, 2024, I confirmed with the shift manager at the Broadway Inn, 1609 West Broadway, in Missoula, Montana, that David Slattery

purchased room 215 for one night, Friday, October 11, with a checkout on Saturday, October 12, at 11:30 a.m.

13. On October 25, 2024, CS1 stated Slattery had rented a room at the Motel 6 on East Broadway a few weeks ago. CS1 was present and saw Slattery with two white males from Butte and in possession of "stacks" of cash. On October 29, 2024, Slattery contacted CS1 from his cell phone number, 406-438-7281, and advised CS1 that he was currently out of town but would be back in Missoula in a few days. Slattery stated he would have pills (slang for fentanyl pills) and clear (slang for methamphetamine) when he returned. CS1 stated Slattery told CS1 in the past that his source of supply is in California, and he would travel to California to obtain fentanyl and methamphetamine.

14. On October 29, 2024, I drove to Everhart's residence in Clinton in an attempt to locate Everhart, Slattery, or Everhart's vehicle. No one was at the residence, and Everhart's vehicle was not parked in the driveway.

15. On October 30, 2024, Task Force Officer (TFO) Kelan Larson canvassed the Missoula County Sheriff's Office database regarding Slattery or any association to cell phone number 406-438-7281. On October 22, 2024, Slattery provided a contact number of 406-438-7281 to Missoula District Court Pre-Trial Services for his pending a felony Criminal Possession of Dangerous Drugs and DUI charge in Missoula County District Court. Slattery was arrested by the

Missoula Police Department on July 7, 2024, for DUI and subsequently charged with CPDD.

16. On October 29, 2024, TFO Larson checked the National License Plate Reader (LPR) database to query Everhart's vehicle, Montana license DOINIT. Everhart's vehicle plate was photographed heading southbound on Interstate 15 outside of North Las Vegas, Nevada, on October 26, 2024. The license plate was again photographed on October 27, 2024, heading southbound on Interstate 15 at the Craig LPR, which is located near Nellis Air Force Base in Las Vegas, Nevada. TFO Larson has "flagged" Everhart's license plate within the LPR system.

17. On October 30, 2024, based on the above information, a U.S. District Court Search Warrant for real time cell site location was authorized by U.S. Magistrate Judge Kathleen Desoto for Slattery's cell phone number, 406 438-7281.

18. On October 31, 2024, I monitored Slattery's cell phone location movement from California through Nevada and then Utah on Interstate 15 northbound. At 12:30 pm, I briefed an ops plan to MRVCTF personnel to conduct a vehicle interdiction stop in Missoula County, dependent on Slattery's route of travel to Missoula. I noticed that Slattery's phone location was south of Pocatello,

Idaho, and had not moved since 11:00 am. The phone location then moved to Pocatello near the Idaho State Police (ISP) Station near Interstate 15.

19. At approximately 2:15 pm, SA Levi Kroschel received a call from ISP. ISP stated they conducted a traffic stop on Katrina Everhart just south of Pocatello, Idaho and had recovered a large quantity of narcotics from the vehicle. ISP arrested Everhart and David Slattery for trafficking narcotics and was not aware of our investigation and/or planned interdiction.

20. ISP provided the following information to the FBI regarding their traffic stop and subsequent search of Everhart's vehicle. On October 31, 2024, at approximately 10:43 am, Everhart was driving a Nissan Maxima, Montana license plate DOINIT, traveling northbound on Interstate 15 south of Pocatello and failed to signal while changing lanes. Once contacted, the ISP Trooper observed a butane torch commonly used for smoking illegal substances in plain view next to the shifter on the center console. Everhart was extremely nervous and could not provide proof of registration or insurance when asked by the Trooper. Everhart opened the center console to search for her registration and insurance. The Trooper observed in plain view two nasal spray cartridges of Naloxone (Narcan) which is used by opiate users to deter the side effects of an opiate overdose.

21. David Slattery and Slattery's adult son, Corey Slattery, were also in the vehicle. Everhart initially lied to the ISP Trooper regarding David's identity as

she told the Trooper Slattery was her ex-husband Dolan Everhart. Everhart was unaware that Dolan had an in-state extraditable arrest warrant out of Kootenai County, Idaho, but would not provide the Trooper with Slattery's true name. After speaking to all occupants, the Trooper identified Slattery by his true name and date of birth. All three occupants were removed from the vehicle based on the Trooper's suspicions that there were illegal drugs in the vehicle.

22. The ISP Trooper called a K-9 Officer to conduct a sweep of the vehicle. The certified drug detection K-9 indicated on the vehicle near the driver side door. Everhart advised the Trooper that they had some "weed" in the vehicle. ISP searched the inside of the vehicle and recovered a bindle of suspected methamphetamine, two pipes, and drug paraphernalia from Everhart's purse in the front seat. ISP also recovered a baggie full of suspected phycobilin mushrooms near Slattery's front passenger side door.

23. Everhart advised the Trooper that the methamphetamine located in the purse was hers and she was apologetic for not telling the Trooper it was in the vehicle. ISP continued their search of the vehicle and located suspected methamphetamine and mushrooms within a hidden compartment in a twist off Pepsi can which was in the passenger side door.

24. ISP opened the trunk of the vehicle and noticed some of the carpet on the trunk lid appeared to be compromised. An ISP Trooper pulled back the

carpet and located large, wrapped bundles of suspected narcotics. ISP seized the suspected narcotics and conducted a field test of the packages. One large zip lock bag containing nearly two pounds of product, totaling 875 grams, fielded tested positive for methamphetamine. Two bags containing hundreds of fentanyl pills, totaling 137 grams, field tested inconclusive for fentanyl. It should be noted that inconclusive field tests for fentanyl is common due to the chemical make-up of the pills. Two additional bags, one containing a grey like powdery substance and one containing a bright white powdery substance, totaling 374 grams, were also field tested for fentanyl. The field test was inconclusive, which again is common due to binding agents and various chemicals contained in fentanyl.

25. When questioned by an ISP Trooper, Everhart stated she was just the driver and stated she was aware of only a few ounces of drugs that were being transported, not the large quantity of drugs that were located in the trunk lid. Everhart then stated she was scared of the people that Slattery dealt with and didn't want to provide any more information if she was going to jail.

26. Slattery was interviewed by an ISP Trooper and stated he and Everhart picked up Corey, his son, in California, prior to returning to Montana. Slattery advised that Corey had no knowledge of the drugs that were located in the vehicle. Slattery initially stated Everhart did not have any knowledge but

eventually admitted Everhart was aware and involved in transporting the drugs to Montana.

27. Everhart and Slattery were both arrested for Trafficking of Methamphetamine, Trafficking of Fentanyl, and Possession of Paraphernalia. Corey Slattery was detained at the scene and released. Everhart and Slattery were transported back to the Bannock County Jail by ISP.

28. Slattery was shown a photo of the grey and white suspected fentanyl by an ISP Trooper. Slattery admitted the substance depicted in the photo was fentanyl powder.

29. In addition to the suspected drugs seized in the vehicle, ISP seized Slattery's cell phone and Everhart's cell phone as evidence. Slattery's cell phone was described as a black and grey Nokia cell phone with assigned call number (406) 438-7281. Everhart's cell phone was described as a blue Motorola cell phone XT2215-1 Type MC3C8 with assigned call number (406) 361-9998, inside a pink and white protective case with the initials "TE" written on the case.

30. On November 6, 2024, Slattery and Everhart were charged per complaint in U.S. District Court, Missoula, by United States Magistrate Kathleen L. DeSoto for Conspiracy to Distribute Controlled Substances and Possession with Intent to Distribute Controlled Substances.

31. All evidence in this matter was transferred to the FBI and the cell phones were shipped to me on November 25, 2024, at the Missoula Resident Agency for processing.

32. On December 4, 2024, Slattery and Everhart were indicted by a Federal Grand Jury for the following:

- Count 1: Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846;

- Count 2: Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1).

33. Based on my training and experience, I know that drug dealers and those who engage in drug related crimes use their phones to perpetuate their criminal activity, especially if those individuals are travelling out of state to purchase drugs for redistribution. These text messages and communications remain on a phone unless deleted by the user. Additionally, I know through my training and experience that drug dealers use their phones to coordinate drug deals, meetings, distribution of drugs to others, and to aid in the acquisition of firearms and ammunition for protection during the commission of these crimes. When committing these crimes, including violent crimes, individuals carry their phones with them, meaning the location of the user can be identified based on the phone.

## TECHNICAL TERMS

    a.    Based on my training and experience, I use the following technical terms to convey the following meanings: wireless telephone, cellular phone, or smartphone. A wireless telephone (or smartphone, mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet using a browser or other applications. Wireless telephones may also include Global Positioning System ("GPS") technology for determining location of the device.

    b.    Based on my training, experience, and research, I know that the device listed in Attachment A, has capabilities that allows it to serve as wireless

telephone or smartphone, digital camera, portable media player, GPS navigation device, and a file storage device. In my training and experience, examining data stored on a cellular device can uncover, among other things, evidence that reveals or suggests who possessed the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

c.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensic tools even if the information is deleted.

d.  Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic evidence is on the device listed in Attachment A, because:

e.  Data on storage medium can provide evidence of a file that was once on the storage medium, but has since been deleted or edited, or of a deleted portion of a file.

f.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

g.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## CONCLUSION

34. Based on the forgoing, I believe there is probable cause to conclude Everhart's cell phone, described as a blue Motorola cell phone XT2215-1 Type MC3C8 with assigned call number (406) 361-9998 contained inside a pink and white protective case with the initials "TE" written on the case, contains evidence of federal crimes, including, but not limited to, Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, a violation of 21 U.S.C. § 846, and Possession with Intent to Distribute Controlled Substances, a violation of 21 U.S.C. § 841(a)(1).

35. It is my belief that there is probable cause to believe that a search of the item described in Attachment A will provide evidence of the above crimes, including, but not limited to, location information and records or communications involved in the commission of the above crimes, as provided in Attachment B.

Respectfully submitted,

_____
Monte Shaide
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to me on this _____ day of December, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge

16